Joseph F. Gagliardi, J.
This is a petition to compel satisfaction of a mortgage dated October 29, 1965, in return for payment of the sum of $225,000, with interest in the sum of $3,712.50, on premises consisting of approximately five acres off Central Park Avenue in Yonkers, New York. The mortgagees do not contest that this is the amount due on the bond secured by this purchase-money mortgage which was part of the price of the sale of the land to petitioner’s predecessor in title, but they do insist that they are entitled to keep the mortgage open of record to secure other promises made by the mortgagor in the mortgage agreement to benefit eight adjacent acres of land which the seller-mortgagees had retained. Those promises are (1) to install a 12-inch sewer main from Central Park Avenue across the petitioner’s property to service the mortgagees’ property before October 29, 1967, with provisions permitting the mortgagees to construct the sewer at the mortgagor’s expense upon default and for a $20,000 surety bond to secure completion by October 29, 1973; (2) to construct a 561.18-foot “ alternate driveway ” from Young Avenue across petitioner’s property to service the mortgagees’ property by October 29, 1968, with similar rights to complete the driveway at mortgagor’s expense; (3) to consent to any applications for variances, changes of zone or special exception uses affecting the mortgagees’ retained parcel; and (4) to complete a 292-family apartment house. The foregoing promises were included in ‘ ‘ rider b constituting part of the MORTGAGE DATED OCTOBER 29, 1965, BETWEEN TWIN TOWERS, INC. [petitioner’s predecessor in title], mortgagor, and irma straus AND LILLIAN ROMM!, MORTGAGEE.”
*48 Petitioner relies on an express prepayment clause in the mortgage. In addition, it replies that the other promises were part of a collateral agreement dated October 29, 1965, which (1) stipulated the termination of the mortgagees’ driveway easement when Morrow Avenue becomes a public street; and (2) prevented the mortgagees from seeking any zoning relief until October 29, 1968. Furthermore, it urges that it expressed readiness to construct the sewer but the City of Yonkers denied it a permit to do so because of the mortgagees having failed, despite request, to file an application for a sewer permit.
The initial question is whether a mortgage can secure the performance of unliquidated engagements such as these promises to build a road and sewer. A mortgage has been defined as ‘ ‘ any conveyance of land intended by the parties at the time of making it to be security for the payment of money or the doing of some prescribed act ” (Burnett v. Wright, 135 N. Y. 543, 547) (emphasis added). This definition which can be found in modern treatises (see, e.g., 38 N. Y. Jur. Mortgages and Deeds of Trust, § 1; 2 Rasch, Real Property Law and Practice, § 1681) admits the possibility of such an unusual purpose although it does not obviate the problems which would be caused by it.
There are recorded cases of mortgages securing promises to provide support in stated installments for the mortgagee’s lifetime (See, e.g., De Clow v. Haverkamp, 198 App. Div. 83 [4th Dept., 1921]) although such a promise must be expressly adopted in the mortgage (Castelli v. Walton Lake Country Club, 112 N. Y. S. 2d 179 [Eager, J., Sup. Ct., Orange County, 1952]). So, too, a mortgage was employed to secure a promise to purchase all of the gasoline sold at a garage premises from the mortgagee in Blakeley v. Agency of Canadian Car & Foundry Co. (73 N.Y.S. 2d 573 [Sup. Ct., N. Y. County, 1947]). There, the court refused to compel satisfaction of the mortgage even when the principal amount was paid because of the open promise to purchase gasoline for an unexpired term. In addition, section 1921 of the Real Property Actions and Proceedings Law which authorizes this proceeding to compel discharge of a mortgage states that the satisfaction piece must certify “that the mortgage has been paid or otherwise satisfied and discharged ” (emphasis added). The court concludes that in the absence of defects such as illegality, unliquidated promises in the nature of those presented in this case may be secured by a mortgage. It follows, therefore, that such promises must be fulfilled to entitle petitioner to a discharge of the mortgage.
That brings the court to the intention of the parties. The prepayment clause is contained in rider “ A ” to the mortgage *49 and reads as follows:“ Any owner of the mortgaged premises may at any time after January 1, 1966 pay the said sum of $500,000 and accrued interest thereon upon giving to the holder hereof and of the accompanying note 10 days prior written notice of such prepayment.”
With respect to the “alternate driveway,” petitioner notes that that promise is related to an instrument executed in conjunction with the deed and mortgage, which conveys easements to the mortgagees for the benefit of their remaining parcel over the paths of the proposed “ alternate driveway ” and the proposed sewer connection. Petitioner properly urges that the promises in the mortgage are incidental to and subject to the provisions of the grant of easement. In other words, the promises in the mortgage should be enforced only insofar as they fulfill the interests of the mortgagees in protecting their remaining parcel. Otherwise, there would be no purpose in enforcing those promises except to oppress the owners of the mortgaged property.
In this connection, petitioner relies upon the provision of the “ alternate driveway” easement which maintains it as “ a covenant running with the land until such time as all of Morrow Avenue shall have been opened, laid out and improved as a public street of the City of Yonkers and accepted for dedication or declared by the City of Yonkers as such public street ”. Petitioner exhibits a copy of Special Ordinance No. 121-1967 (dated April 11, 1967) which declares Morrow Avenue as a public street. It insists that the need for the “ alternate driveway ” over its property has been obviated by that ordinance so that the driveway easement and promise to pave it are fulfilled and terminated. But the mortgagees contend that Morrow Avenue was at the time of the transaction a mere “ paper street ”, proposed to furnish access to their remaining parcel, which has not been paved to this day. They argue that the quoted language could not have been meant to wipe out the ‘ ‘ alternate driveway ’ ’ until Morrow Avenue was a serviceable public street in fact as well as in law.
The issue is whether the disjunctive phrase “ or declared by the City of Yonkers as such public street” is intended as an alternative to all the other phrases, including the street having been “ opened, laid out and improved ” as well as “ accepted for dedication.” The court deems the meaning of the language to be clear. Morrow Avenue may be either “ accepted for dedication” or “declared” as a city street by the City of Yonkers but in any event, it must also be “ improved ” as such. This not being the case, the easement and the mortgage securing the mortgagees’ rights to a paved “ alternate driveway ” are *50 not terminated. Therefore, the mortgage securing that right cannot now be discharged of record. The ‘ ‘ alternate driveway ’ ’ must be built or Morrow Avenue must be properly paved.
The same reasoning applies to petitioner’s obligation to build a sewer connection. Of course, in this connection, the mortgagees cannot unreasonably prevent performance by the mortgagor (Jones v. Dodge, 137 App. Div. 853). Hence, improper refusal by the mortgagees to apply for a permit to do the sewer work would excuse its necessity.
Moreover, the court doubts that the promise to consent to zoning applications is enforcible by the mortgage or may hinder its satisfaction. The reason is that the promises to do work are readily translatable into money, albeit without precision. But the value of a consent to a zoning application (which might not even influence the zoning authority) is of such speculative monetary value that it cannot be enforced as. a mortgage lien. It would be impossible for the court in the event of foreclosure to fix the amount of the lien and direct the disposition of proceeds of a foreclosure sale (see Real Property Actions and Proceedings Law, § 1351).
A final consideration is petitioner’s right of prepayment of the principal and interest. Under the instrument, it is clear that this right is unfettered so that petitioner by making tender of the principal and interest stops the further accrual of interest. Thus, the mortgage lien can only remain to secure the performance of the unliquidated obligations. Petitioner is entitled to have this reduction of the lien established of record. Therefore, the petition is granted to the extent that upon payment of $225,000, with interest in the sum of $3,712.50, the mortgagees must deliver an instrument in recordable form certifying that the principal and interest stated in the mortgage have been paid. The form of the instrument shall be determined in the judgment herein. The petition is otherwise denied.